BUCHALTER
A Professional Corporation
JOANNE N. DAVIES (SBN: 204100)
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 949.224.6221
Email: jdavies@buchalter.com

BUCHALTER
A Professional Corporation
RANDALL L. MANVITZ (SBN: 224598)
425 Market Street, Suite 2900
San Francisco, CA 94105-2491
Telephone: 415.227.0900
Email: rmanvitz@buchalter.com

Attorneys for Plaintiff McKesson Corporation

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCKESSON CORPORATION,<br><br>     Plaintiff,<br><br>     vs.<br><br>TIN RX THE INDEPENDENT NETWORK, INC., a California corporation; TIN RX / CASTRO, SAN FRANCISCO, a California corporation; and TIN RX AT THE TOWER, INC., a California corporation<br><br>     Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>(1) Breach of Contract (Credit App.)<br>(2) Breach of Contract (Note)<br>(3) Breach of Contract (Loan Note)<br>(4) Breach of Contract (Credit App.)<br>(5) Breach of Contract (Note)<br>(6) Breach of Contract (Credit App.)<br>(7) Breach of Contract (Note)<br>(8) Breach of Contract (Guaranty)<br>(9) Goods Sold & Delivered<br>(10) Open Book Account<br>(11) Account Stated<br>(12) Unjust Enrichment<br>(13) Quantum Meruit |

Plaintiff MCKESSON CORPORATION ("Plaintiff" or "McKesson"), by its undersigned counsel, as and for its Complaint, against Defendants TIN RX THE INDEPENDENT NETWORK, INC. ("TIN Network"), TIN RX / CASTRO, SAN FRANCISCO ("TIN Castro"), and TIN RX AT THE TOWER, INC. ("TIN Tower") (collectively, "Defendants"), alleges and states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of the value of $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and the Defendants.

2. This Court has personal jurisdiction over the parties because Defendants are organized pursuant to the laws of the State of California, have principal places of business in California, regularly transact substantial business in California, are located in California and/or reside in California.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) Defendants TIN Network, and TIN Tower are present, doing or soliciting business, engaging in the persistent courses of conduct within, or residing in the Eastern District of California; (ii) violated McKesson's rights in the Eastern District of California (namely in Tehama County, and Stanislaus County), and (iii) knew or should have known that such conduct would cause injury to McKesson in the State of California.

## INTRODUCTION

4. This is a diversity suit to collect for unpaid goods and loans.

5. McKesson is in the business of distributing pharmaceutical products manufactured by others to pharmacies, retailers and others.

6. Defendants are California pharmacies who purchased pharmaceutical products from McKesson.

7. McKesson and the Defendants have done business for a number of years preceding the specific transactions at issue in this suit following a common course of conduct. Under this business arrangement, McKesson agreed to sell pharmaceutical products to Defendants, and Defendants agreed to purchase and accept from McKesson, the goods. These transactions were documented through purchase orders issued by Defendants and invoices issued by McKesson.

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

BN 82024409v1

8.     When Defendants needed product from McKesson, Defendants submitted purchase orders to McKesson detailing the type of pharmaceutical products and quantities they required. Such purchase orders were issued by Defendants for each of the transactions at issue in this case. McKesson fulfilled the requests by delivering the goods to the Defendants along with providing invoices requesting payment of the goods.

9.     The Defendants each executed credit applications with McKesson wherein they agreed to pay for their respective orders in full in accordance with the applicable payment terms and granted McKesson a security interest in all of their personal property. Also, defendant TIN Network issued a promissory note to McKesson for a loan McKesson provided to assist TIN Network with funding acquisitions for the pharmacy.

10.     In 2022, the TIN RX brand expanded its pharmacies into Texas through TIN RX #805, Inc., TIN RX #806, Inc., TIN RX #807, Inc., and TIN RX #808, Inc. (collectively, the "Texas TINs"). Defendants and the Texas TINs shall collectively be referred to herein as the "TIN Entities."

11.     Like the Defendants, the Texas TINs executed credit applications with McKesson wherein they agreed that in exchange for McKesson's agreement to accept orders from the Texas TINs on credit the Texas TINs agreed to pay for their respective orders in full in accordance with the applicable payment terms and granted McKesson a security interest in all of their personal property. Also, the Texas TINs issued a promissory note to McKesson for a loan McKesson provided to assist the Texas TINs with funding acquisitions for the pharmacies.

12.     In 2023, the TIN Entities defaulted on their payment obligations to McKesson and in an effort to resolve the default, each of the TIN Entities executed and delivered to McKesson promissory notes wherein they each promised to repay to McKesson the outstanding indebtedness, plus interest and other charges, in installments as more specifically set forth in each promissory note. The TIN Entities

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

BN 82024409v1

also entered into a cross-corporate guaranty wherein each guaranteed the payments of themselves and the others to McKesson.

13.    Subsequently, the TIN Entities again defaulted on their obligations to McKesson under the promissory notes, credit applications and cross-corporate guaranty. As a result, there is now due, owing and payable to McKesson from Defendants, jointly and severally, in accordance with the terms of said agreements the sum of $2,223,013.41, plus accrued interest, accruing interest and late charges, according to proof at time of trial or entry of judgment, and costs of collection including reasonable attorneys' fees and costs.

14.    On February 21, 2024, McKesson sent letters to the Defendants notifying them of their default under the credit applications, promissory notes and cross-corporate guaranty. Defendants have breached their agreements with McKesson by refusing to pay all amounts due and owing to McKesson.

## PARTIES

15.    Plaintiff McKesson Corporation is a corporation duly organized and existing under the laws of the State of Delaware, is currently in good standing, and has been so at all times pertinent to these causes of action. McKesson's principal place of business is located at 6555 State Hwy 161, Irving, Texas 75039.

16.    Defendant TIN Network is a corporation organized under the laws of the State of California. Upon information and belief, TIN Network's principal place of business is located at 1322 Solano Street, Corning, CA 96021 (Tehama County). TIN Network can be served through its registered agent for service, Incorporating Services, Ltd., 7801 Folsom Blvd. #202, Sacramento, CA 95826; or wherever it may be found.

17.    Defendant TIN Castro is a corporation organized under the laws of the State of California. Upon information and belief, TIN Castro's principal place of business is located at 1390 Market Street, #200, San Francisco, CA 94102. TIN Castro can be served through its registered agent for service, Incorporating Services,

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE
BN 82024409v1

Ltd., 7801 Folsom Blvd. #202, Sacramento, CA 95826; or wherever it may be found.

18.     Defendant TIN Tower is a corporation organized under the laws of the State of California. Upon information and belief, TIN Tower's principal place of business is located at 1801 Colorado Avenue, Suite 300, Turlock, CA 95382 (Stanislaus County). TIN Tower can be served through its registered agent for service, Incorporating Services, Ltd., 7801 Folsom Blvd. #202, Sacramento, CA 95826; or wherever it may be found.

## GENERAL ALLEGATIONS

## I.     THE CREDIT APPLICATIONS

### A.     TIN Network's Credit Application With McKesson

1.     On or about November 14, 2017, TIN Network applied, in writing, for credit with McKesson for the purchase of pharmaceutical products from McKesson. In doing so, TIN Network executed a customer application on November 14, 2017 (the "TIN Network Credit App."). A true, correct and complete copy of the TIN Network Credit App. (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 1**.

2.     In the TIN Network Credit App., TIN Network agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN Network's account. Further, TIN Network agreed to pay for all purchases, fees and other charges incurred by TIN Network or an authorized user on account of TIN Network, including service charges on past due amounts at the highest rate permitted by law. Moreover, TIN Network agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN Network.

3.      In order to secure its obligations under the TIN Network Credit App., TIN Network granted to McKesson a security interest in all of TIN Network's personal property.

**B.      TIN Castro's Credit Application With McKesson**

4.      On or about May 9, 2019, TIN Castro applied, in writing, for credit with McKesson for the purchase of pharmaceutical products from McKesson. In doing so, TIN Castro executed a customer application on May 9, 2019 (the "TIN Castro Credit App."). A true, correct and complete copy of the TIN Castro Credit App. (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 2**.

5.      In the TIN Castro Credit App., TIN Castro agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN Castro's account. Further, TIN Castro agreed to pay for all purchases, fees and other charges incurred by TIN Castro or an authorized user on account of TIN Castro, including service charges on past due amounts at the highest rate permitted by law. Moreover, TIN Castro agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN Castro.

6.      In order to secure its obligations under the TIN Castro Credit App., TIN Castro granted to McKesson a security interest in all of TIN Network's personal property.

**C.      TIN Tower's Credit Application With McKesson**

7.      On or about November 16, 2019, TIN Tower applied, in writing, for credit with McKesson for the purchase of pharmaceutical products from McKesson. In doing so, TIN Tower executed a customer application on November 16, 2019 (the "TIN Tower Credit App."). A true, correct and complete copy of the TIN Tower Credit App. (except for the redaction of social security numbers, tax ID numbers, and

other private financial information) is attached hereto, and incorporated herein, as **Exhibit 3**.

8.      In the TIN Tower Credit App., TIN Tower agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN Tower's account. Further, TIN Tower agreed to pay for all purchases, fees and other charges incurred by TIN Tower or an authorized user on account of TIN Tower, including service charges on past due amounts at the highest rate permitted by law. Moreover, TIN Tower agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN Tower.

9.      In order to secure its obligations under the TIN Tower Credit App., TIN Tower granted to McKesson a security interest in all of TIN Tower's personal property.

**D.      TIN 805's Credit Application With McKesson**

10.      On or about February 9, 2022, TIN Rx #805, Inc., a Texas corporation ("TIN 805"), an affiliate of Defendants, applied, in writing, for credit with McKesson Corporation, and its affiliated companies, for the purchase of pharmaceutical products from McKesson. In doing so, TIN 805 executed a customer application on February 9, 2022 (the "TIN 805 Credit App."). A true, correct and complete copy of the TIN 805 Credit App. (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 4**.

11.      In the TIN 805 Credit App., TIN 805 agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN 805's account. Further, TIN 805 agreed to pay for all purchases, fees and other charges incurred by TIN 805 or an authorized user on account of TIN 805, including

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**
BN 82024409v1

service charges on past due amounts at the highest rate permitted by law. Moreover, TIN 805 agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN 805.

12.    In order to secure its obligations under the TIN 805 Credit App., TIN 805 granted to McKesson a security interest in all of TIN 805's personal property.

**E.    TIN 806's Credit Application With McKesson**

13.    On or about February 9, 2022, TIN Rx #806, Inc., a Texas corporation ("TIN 806"), an affiliate of Defendants, applied, in writing, for credit with McKesson Corporation, and its affiliated companies, for the purchase of pharmaceutical products from McKesson. In doing so, TIN 806 executed a customer application on February 9, 2022 (the "TIN 806 Credit App."). A true, correct and complete copy of the TIN 806 Credit App. (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 5**.

14.    In the TIN 806 Credit App., TIN 806 agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN 806's account. Further, TIN 806 agreed to pay for all purchases, fees and other charges incurred by TIN 806 or an authorized user on account of TIN 806, including service charges on past due amounts at the highest rate permitted by law. Moreover, TIN 806 agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN 806.

15.    In order to secure its obligations under the TIN 806 Credit App., TIN 806 granted to McKesson a security interest in all of TIN 806's personal property.

**F.     TIN 807's Credit Application With McKesson**

16.     On or about February 9, 2022, TIN Rx #807, Inc., a Texas corporation ("TIN 807"), an affiliate of Defendants, applied, in writing, for credit with McKesson for the purchase of pharmaceutical products from McKesson. In doing so, TIN 807 executed a customer application on February 9, 2022 (the "TIN 807 Credit App."). A true, correct and complete copy of the TIN 807 Credit App. (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 6**.

17.     In the TIN 807 Credit App., TIN 807 agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN 807's account. Further, TIN 807 agreed to pay for all purchases, fees and other charges incurred by TIN 807 or an authorized user on account of TIN 807, including service charges on past due amounts at the highest rate permitted by law. Moreover, TIN 807 agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN 807.

18.     In order to secure its obligations under the TIN 807 Credit App., TIN 807 granted to McKesson a security interest in all of TIN 807's personal property.

**G.     TIN 808's Credit Application With McKesson**

19.     On or about February 9, 2022, TIN Rx #808, Inc., a Texas corporation ("TIN 808"), an affiliate of Defendants, applied, in writing, for credit with McKesson for the purchase of pharmaceutical products from McKesson. In doing so, TIN 808 executed a customer application on February 9, 2022 (the "TIN 808 Credit App."). A true, correct and complete copy of the TIN 808 Credit App. (except for the redaction of social security numbers, tax ID numbers, and other private financial information) is attached hereto, and incorporated herein, as **Exhibit 7.**

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**
BN 82024409v1

20.     In the TIN 808 Credit App., TIN 808 agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN 808's account. Further, TIN 808 agreed to pay for all purchases, fees and other charges incurred by TIN 808 or an authorized user on account of TIN 808, including service charges on past due amounts at the highest rate permitted by law. Moreover, TIN 808 agreed to pay McKesson for all reasonable attorneys' fees and expenses or costs that McKesson incurs for enforcement of its right to collect amounts owed by TIN 808.

21.     In order to secure its obligations under the TIN 808 Credit App., TIN 808 granted to McKesson a security interest in all of TIN 808's personal property.[1]

## II.     THE LOAN NOTES AND SECURITY AGREEMENTS.

### A.     TIN Network's Loan Note

22.     On or about July 30, 2018, TIN Network issued a Negotiable Promissory Note (Variable-Rate/Secured) (the "TIN Network Loan Note") to McKesson for itself and as a collection agent for any of its affiliates, in the amount of $437,118.00, together with interest at the minimum rate of 7.25 %. TIN Network provided the TIN Network Loan Note to McKesson in an attempt to (i) induce McKesson to loan money to TIN Network to assist TIN Network in funding acquisitions; and (ii) induce McKesson to (a) continue to sell pharmaceutical products to each of them, and (b) to provide credit to TIN Network. A copy of the TIN Network Loan Note is attached hereto, and incorporated herein, as **Exhibit 8**.

23.     Pursuant to the terms of the TIN Network Loan Note, TIN Network was required to make 83 consecutive monthly installment payments to McKesson in the amount of $5,203.78 and a final 84th month installment payment in the remaining

---

[1] The TN Credit App., TC Credit App., TIN Tower Credit App., TIN 805 Credit App., TIN 806 Credit App., TIN 807 Credit App. and TIN 808 Credit App. shall be referred to herein collectively as the "Credit Applications."

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

BN 82024409v1

unpaid amount (the "Monthly Installments"). On the due date of the final installment, TIN Network was required to pay all remaining principal and all accrued interest.

24.     Under the terms of the TIN Network Loan Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

25.     In order to secure its obligations under the TIN Network Loan Note, TIN Network granted to McKesson a security interest in all of TIN Network's personal property.

**B.     TIN Network's Security Agreement**

26.     TIN Network also executed and delivered a Security Agreement to McKesson granting McKesson a security interest in all of TIN Network's personal property (the "TIN Network Security Agreement"). A copy of the TIN Network Security Agreement is attached hereto, and incorporated herein as **Exhibit 9**.

**C.     The Texas TINs Loan Note**

27.     On or about February 18, 2022, the Texas TINS issued a Negotiable Promissory Note (Variable-Rate/Secured) (the "Texas TINs Loan Note") to McKesson for itself and as a collection agent for any of its affiliates, in the amount of $920,000 at the minimum rate of 6.25%. The Texas TINS provided the Texas TINs Loan Note to McKesson in an attempt to (i) induce McKesson to (a) continue to sell pharmaceutical products to each of them, and (b) to provide credit to the Texas TINs. A copy of the Texas TINs Loan Note is attached hereto, and incorporated herein, as **Exhibit 10**.

28.     Pursuant to the terms of the Texas TINs Loan Note, the Texas TINs were required to make 83 consecutive monthly installment payments to McKesson in the amount of $13,550.40 and a final 84th month installment payment in the remaining unpaid (the "Monthly Installments"). On the due date of the final installment, the Texas TINs were required to pay all remaining principal and all accrued interest.

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

29.     Under the terms of the Texas TINs Loan Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

30.     In order to secure its obligations under the Texas TINs Loan Note, TIN Texas granted to McKesson a security interest in all of the Texas TINs personal property.

**D.     The Texas TINs' Security Agreements**

31.     The Texas TINs also each executed and delivered a Security Agreement to McKesson granting McKesson a security interest in each of the Texas TINs personal property. A copy of the security agreements are attached hereto, and incorporated herein as follows: the TIN 805 Security Agreement is attached as **Exhibit 11**; the TIN 806 Security Agreement is attached as **Exhibit 12**; the TIN 807 Security Agreement is attached as **Exhibit 13**; and the TIN 808 Security Agreement is attached as **Exhibit 14**.

**III.     THE TIN ENTITIES' NEW NOTES, CROSS-CORPORATE GUARANTY AND DEFAULTS THEREUNDER**

32.     In or around August 2023, the TIN Entities defaulted on their obligations to McKesson under their respective Credit Applications and associated agreements. Accordingly, in order to continue to do business with McKesson, the TIN Entities each issued promissory notes to McKesson, as follows:

**A.     The TIN Network Note**

33.     On or about September 11, 2023, TIN Network issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN Network Note") to McKesson, in the amount of $349,802.08, together with interest at the rate of 10.5 % per annum. TIN Network provided the TIN Network Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN Network goods balance, and (ii) induce McKesson to (a) continue to sell pharmaceutical products to it, and (b)

provide additional credit to TIN Network. A copy of the TIN Network Note is attached hereto, and incorporated herein, as **Exhibit 15**.

34.    Pursuant to the terms of the TIN Network Note, TIN Network was required to make 77 weekly installment payments to McKesson in the amount of $4,484.64 (the "Weekly Installments") with a final installment due in the amount of $4,484.80. On the due date of the final installment, TIN Network was required to pay all remaining principal and all unpaid accrued interest.

35.    Under the terms of the TIN Network Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

36.    In order to secure its obligations under the TIN Network Note, TIN Network granted to McKesson a security interest in all of TIN Network's personal property.

37.    TIN Network defaulted under the terms of the TIN Network Note by failing to make the Weekly Installments when due.

38.    Pursuant to the terms of the TIN Network Note, as a result of TIN Network's default under the TIN Network Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $318,409.60, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN Network Note.

39.    Despite due demand, TIN Network has failed and refused to pay the amount due under the TIN Network Note.

**B.    The TIN Castro Note**

40.    On or about September 11, 2023, TIN Castro issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN Castro Note") to McKesson, in the amount of $194,529.69, together with interest at the rate of 10.5% per annum. TIN Castro provided the TIN Castro Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN Castro goods balance, and (ii) induce

McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to TIN Castro. A copy of the TIN Castro Note is attached hereto, and incorporated herein, as **Exhibit 16**.

41.     Pursuant to the terms of the TIN Castro Note, TIN Castro was required to make 77 weekly installment payments to McKesson in the amount of $2,493.97 (the "Weekly Installments") with a final installment due in the amount of $2,494.00. On the due date of the final installment, TIN Castro was required to pay all remaining principal and all unpaid accrued interest.

42.     Under the terms of the TIN Castro Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

43.     In order to secure its obligations under the TIN Castro Note, TIN Castro granted to McKesson a security interest in all of TIN Castro's personal property.

44.     TIN Castro defaulted under the terms of the TIN Castro Note by failing to make the Weekly Installments when due.

45.     Pursuant to the terms of the TIN Castro Note, as a result of TIN Castro's default under the TIN Castro Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $183,714.52, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN Castro Note.

46.     Despite due demand, TIN Castro has failed and refused to pay the amount due under the TIN Castro Note.

**C.     The TIN Tower Note**

47.     On or about September 11, 2023, TIN Tower issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN Tower Note") to McKesson, in the amount of $143,600.47, together with interest at the rate of 10.5% per annum. TIN Tower provided the TIN Tower Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN Tower goods balance, and (ii) induce

McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to TIN Tower. A copy of the TIN Tower Note is attached hereto, and incorporated herein, as **Exhibit 17**.

48.    Pursuant to the terms of the TIN Tower Note, TIN Tower was required to make 77 weekly installment payments to McKesson in the amount of $1,841.03 (the "Weekly Installments") with a final installment due in the amount of $1,841.16. On the due date of the final installment, TIN Tower was required to pay all remaining principal and all unpaid accrued interest.

49.    Under the terms of the TIN Tower Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

50.    In order to secure its obligations under the TIN Tower Note, TIN Tower granted to McKesson a security interest in all of TIN Tower's personal property.

51.    TIN Tower defaulted under the terms of the TIN Tower Note by failing to make the Weekly Installments when due.

52.    Pursuant to the terms of the TIN Tower Note, as a result of TIN Tower's default under the TIN Tower Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $130,713.26, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN Tower Note.

53.    Despite due demand, TIN Tower has failed and refused to pay the amount due under the TIN Tower Note.

**D.    The TIN 805 Note**

54.    On or about September 12, 2023, TIN 805 issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN 805 Note") to McKesson, in the amount of $43,317.31, together with interest at the rate of 10.5% per annum. TIN 805 provided the TIN 805 Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN 805 goods balance, and (ii) induce

McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to TIN 805. A copy of the TIN 805 Note is attached hereto, and incorporated herein, as **Exhibit 18**.

55.     Pursuant to the terms of the TIN 805 Note, TIN 805 was required to make 77 weekly installment payments to McKesson in the amount of $555.35 (the "Weekly Installments") with a final installment due in the amount of $555.36. On the due date of the final installment, TIN 805 was required to pay all remaining principal and all unpaid accrued interest.

56.     Under the terms of the TIN 805 Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

57.     In order to secure its obligations under the TIN 805 Note, TIN 805 granted to McKesson a security interest in all of TIN 805's personal property.

58.     TIN 805 defaulted under the terms of the TIN 805 Note by failing to make the Weekly Installments when due.

59.     Pursuant to the terms of the TIN 805 Note, as a result of TIN 805's default under the TIN 805 Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $43,317.31, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN 805 Note.

60.     Despite due demand, TIN 805 has failed and refused to pay the amount due under the TIN 805 Note.

**E.     The TIN 806 Note**

61.     On or about September 12, 2023, TIN 806 issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN 806 Note") to McKesson, in the amount of $160,919.17, together with interest at the rate of 10.5% per annum. TIN 806 provided the TIN 806 Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN 806 goods balance, and (ii) induce

McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to TIN 806. A copy of the TIN 806 Note is attached hereto, and incorporated herein, as **Exhibit 19**.

62.    Pursuant to the terms of the TIN 806 Note, TIN 806 was required to make 77 weekly installment payments to McKesson in the amount of $2,042.83 (the "Weekly Installments") with a final installment due in the amount of $2,063.55. On the due date of the final installment, TIN 806 was required to pay all remaining principal and all unpaid accrued interest.

63.    Under the terms of the TIN 806 Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

64.    In order to secure its obligations under the TIN 806 Note, TIN 806 granted to McKesson a security interest in all of TIN 806's personal property.

65.    TIN 806 defaulted under the terms of the TIN 806 Note by failing to make the Weekly Installments when due.

66.    Pursuant to the terms of the TIN 806 Note, as a result of TIN 806's default under the TIN 806 Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $158,856.11, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN 806 Note.

67.    Despite due demand, TIN 806 has failed and refused to pay the amount due under the TIN 806 Note.

F.    **The TIN 807 Note**

68.    On or about September 11, 2023, TIN 807 issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN 807 Note") to McKesson, in the amount of $165,613.27, together with interest at the rate of 10.5% per annum. TIN 807 provided the TIN 807 Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN 807 goods balance, and (ii) induce

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to TIN 807. A copy of the TIN 807 Note is attached hereto, and incorporated herein, as **Exhibit 20**.

69. Pursuant to the terms of the TIN 807 Note, TIN 807 was required to make 77 weekly installment payments to McKesson in the amount of $2,123.24 (the "Weekly Installments") with a final installment due in the amount of $2,123.79. On the due date of the final installment, TIN 807 was required to pay all remaining principal and all unpaid accrued interest.

70. Under the terms of the TIN 807 Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

71. In order to secure its obligations under the TIN 807 Note, TIN 807 granted to McKesson a security interest in all of TIN 807's personal property.

72. TIN 807 defaulted under the terms of the TIN 807 Note by failing to make the Weekly Installments when due.

73. Pursuant to the terms of the TIN 807 Note, as a result of TIN 807's default under the Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $165,613.27, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN 807 Note.

74. Despite due demand, TIN 807 has failed and refused to pay the amount due under the TIN 807 Note.

**G.    The TIN 808 Note**

75. On or about September 11, 2023, TIN 808 issued a Negotiable Promissory Note (Fixed Rate/Secured) (the "TIN 808 Note") to McKesson, in the amount of $31,440.52, together with interest at the rate of 10.5% per annum. TIN 808 provided the TIN 808 Note to McKesson in an attempt to (i) demonstrate a commitment to pay the outstanding TIN 808 goods balance, and (ii) induce

McKesson to (a) continue to sell pharmaceutical products to it, and (b) provide additional credit to TIN 808. A copy of the TIN 808 Note is attached hereto, and incorporated herein, as **Exhibit 21**.

76.     Pursuant to the terms of the TIN 808 Note, TIN 808 was required to make 77 weekly installment payments to McKesson in the amount of $403.08 (the "Weekly Installments") with a final installment due in the amount of $403.36. On the due date of the final installment, TIN 808 was required to pay all remaining principal and all unpaid accrued interest.

77.     Under the terms of the TIN 808 Note, a late charge was to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid.

78.     In order to secure its obligations under the TIN 808 Note, TIN 808 granted to McKesson a security interest in all of TIN 808's personal property.

79.     TIN 808 defaulted under the terms of the TIN 808 Note by failing to make the Weekly Installments when due.

80.     Pursuant to the terms of the TIN 808 Note, as a result of TIN 808's default under the Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $31,314.95, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN 808 Note.

81.     Despite due demand, TIN 808 has failed and refused to pay the amount due under the TIN 808 Note.[2]

**H.     The TIN Entities' Cross-Corporate Guaranty**

82.     On or about October 3, 2023, the TIN Entities delivered to McKesson an executed Guaranty (the "Cross-Corporate Guaranty"), in favor of McKesson, to

---

[2] The TIN Network Note, TIN Castro Note, TIN Tower Note, TIN 805 Note, TIN 806 Note, TIN 807 Note and TIN 808 Note are herein collectively referred to as the "Notes."

induce McKesson to enter into the Notes. A copy of the Cross-Corporate Guaranty is attached hereto, and incorporated herein, as **Exhibit 22**.

83. In the Cross-Corporate Guaranty, the TIN Entities absolutely, unconditionally and irrevocably guaranteed, and jointly and severally, as primary obligor, the full and prompt performance and payment when due, of all of the TIN Entities' present and future obligations to McKesson.

84. The TIN Entities also agreed that their obligations under the Cross-Corporate Guaranty shall not be discharged as a result of, or otherwise affected by, any invalidity or unenforceability against the TIN Entities of any of the obligations for any reason, or the insufficiency, invalidity, unenforceability or failure of perfection of, any security for the obligations.

85. In the Cross-Corporate Guaranty, each of the TIN Entities agreed (a) to pay on demand (i) all sums due and to become due to McKesson from any of the TIN Entities, (ii) all losses, costs, attorneys' fees or expenses which may be suffered by McKesson by reason of the TIN Entities' default on their obligations; and (iii) any deficiency resulting from a sale of security held by McKesson even if the sale is made without notice to some or all of the TIN Entities, and (b) perform all of the TIN Entities' obligations owed to McKesson, without McKesson first having to proceed against any or all of TIN Entities.

86. In the Cross-Corporate Guaranty, the TIN Entities also waived notice of McKesson's acceptance of the Cross-Corporate Guaranty and of presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to McKesson by the TIN Entities.

87. The TIN Entities also agreed to pay, on demand, all of McKesson's losses, costs, attorneys' fees or expenses incurred by McKesson in connection with the enforcement or attempted enforcement or preservation of any rights or interests under the Cross-Corporate Guaranty.

88.     Pursuant to the terms of the Cross-Corporate Guaranty, as a result of the TIN Entities default under their obligations to McKesson, McKesson is entitled to be paid the unpaid principal balance of $2,223,013.41, plus unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the Cross-Corporate Guaranty.

89.     Despite due demand, Defendants have failed and refused to pay the amount due under the Cross-Corporate Guaranty.

## IV.    TIN NETWORK AND THE TEXAS TINS DEFAULT UNDER THE LOANS

### A.    TIN Network's Default Under The TIN Network Loan Note

90.     TIN Network defaulted under the terms of the TIN Network Loan Note by failing to make the Monthly Installments when due.

91.     Pursuant to the terms of the TIN Network Loan Note, as a result of TIN Network's default under the TIN Network Loan Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $85,678.76, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs and reasonable attorneys' fees incurred by McKesson in connection with the TIN Network Loan Note.

92.     Despite due demand, TIN Network has failed and refused to pay the TIN Network Loan Note.

### B.    The Texas TINs Default Under The Texas TINs Loan Note

93.     The Texas TINs defaulted under the terms of the Texas TINs Loan Note by failing to make the Monthly Installments when due.

94.     Pursuant to the terms of the Texas TINs Loan Note, as a result of the Texas TINs' default under the Texas TINs Loan Note, McKesson is entitled to be paid the unpaid principal balance in the amount of $791,596.31, unpaid accrued interest and late charges, accruing interest, and all of McKesson's collection costs

and reasonable attorneys' fees incurred by McKesson in connection with the Texas TINs Loan Note.

95.     Despite due demand, the Texas TINs have failed and refused to pay the Texas TINs Loan Note.

## V.   THE   TIN   ENTITIES'   DEFAULT   ON   THEIR   PAYMENT OBLIGATIONS FOR THE PURCHASE OF GOODS.

96.     McKesson sold and delivered various goods including certain pharmaceutical products to the TIN Entities (the "Goods") at their request, and delivered invoices for each such sale to the respective TIN Entity (collectively the "Invoices").

97.     Each of the TIN Entities respectively received and accepted the Goods they each ordered without objecting to the price and without identifying any defects in the quality or quantity of the Goods.

98.     Each of the TIN Entities received the respective Invoices and did not dispute any of the information set forth in the Invoices.

99.     Despite their receipt and acceptance of the Goods and the Invoices, and despite due demand by McKesson, each of the TIN Entities has failed and refused to pay their respective Goods Balance and continues to refuse to pay their respective Goods Balance.

100.   The Credit Applications provide in part that in the event McKesson is required to take action to collect amounts due, it shall be entitled to recover all costs and expenses of collection, including without limitation reasonable attorneys' fees and court costs.

## VI.   AMOUNTS DUE AND OWING.

101.   The amounts due and owing to McKesson is set forth as follows:

| Primary Obligor(s) | Notes for Trade Account (Goods) – Unpaid Principal Balance | Notes for Loans – Unpaid Principal Balance | Trade Account (Goods) – Additional Unpaid Principal Amount | Total |
|---|---|---|---|---|
| TIN Network | $318,409.60 | $85,678.76 | $226,121.12 | $630,209.48 |
| TIN Castro | $183,714.52 | | $60,010.57 | $243,725.09 |
| TIN Tower | $130,713.26 | | $26,896.13 | $157,609.39 |
| TIN 805 | $43,317.31 | | | $43,317.31 |
| TIN 806 | $158,856.11 | | $392.10 | $159,248.21 |
| TIN 807 | $165,613.27 | | $379.40 | $165,992.67 |
| TIN 808 | $31,314.95 | | | $31,314.95 |
| Texas TINs | | $791,596.31 | | $791,596.31 |
| | | | TOTAL* | $2,223,013.41 |

*Amount owed by Defendants under the Cross-Corporate Guaranty

## VII.   DEMAND FOR PAYMENT.

102.   Although demand for payment has been made, Defendants have failed and refused and continue to fail and to refuse to pay to McKesson the amount due and owing under the Credit Applications, the Notes, the TIN Network Loan Note, the Texas TINs Loan Note and the Cross-Corporate Guaranty.

## VIII.   CONDITIONS PRECEDENT AND ATTORNEYS' FEES AND COSTS.

103.   All conditions precedent to the initiation of this lawsuit have occurred, been performed, or have been waived or excused.

104.   McKesson performed all of the promises, conditions and covenants it agreed to perform pursuant to the terms of the Credit Applications, Notes, TIN Network Loan Note, and Texas TINs Loan Note, except for those promises, conditions and covenants excused by the acts and omissions of Defendants.

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

BN 82024409v1

105.   The Credit Applications, Notes, TIN Network Loan Note, Texas TINs Loan Note, and Cross-Corporate Guaranty provide that Defendants agree to pay all reasonable attorney fees and expenses or costs incurred by McKesson in enforcing its rights to collect amounts due therefrom. McKesson has retained the law firm of Buchalter, A Professional Corporation and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT – TIN NETWORK CREDIT APP.**

**(Against Defendant TIN Network)**

106.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

107.   The TIN Network Credit App. constitutes an enforceable agreement between McKesson and TIN Network.

108.   In the TIN Network Credit App., TIN Network agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN Network's account.

109.   McKesson satisfied its obligations under the terms of the TIN Network Credit App.

110.   TIN Network received and accepted the Goods delivered by McKesson to TIN Network in good condition, without objection and without timely rejection or revocation of acceptance.

111.   McKesson issued Invoices to TIN Network for the Goods.

112.   TIN Network breached the TIN Network Credit App. by, among other things, failing to pay for the Goods when payment was due.

113.   McKesson has been damaged by TIN Network's breaches.

114.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $544,530.72, together with service fees and charges, interest and McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT – TIN NETWORK NOTE

### (Against Defendant TIN Network)

115.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

116.   In exchange for fair consideration, TIN Network agreed to pay the amounts due under the TIN Network Note in accordance with the terms of the TIN Network Note.

117.   McKesson has fulfilled all of its obligations under the TIN Network Note.

118.   TIN Network has breached its obligations under the TIN Network Note, by among other things, failing to pay the amounts due thereunder.

119.   McKesson has been damaged by TIN Network's failure and refusal to pay the amounts due under the TIN Network Note.

120.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $318,409.60, together with interest at the rate set forth in the TIN Network Note, service fees and charges, McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT – TIN NETWORK LOAN NOTE

### (Against Defendant TIN Network)

121.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

BN 82024409v1

forth herein.

122.   In exchange for fair consideration, TIN Network agreed to pay the amounts due under the TIN Network Loan Note in accordance with the terms of the TIN Network Loan Note.

123.   McKesson has fulfilled all of its obligations under the TIN Network Loan Note.

124.   TIN Network has breached its obligations under the TIN Network Loan Note, by among other things, failing to pay the amounts due thereunder.

125.   McKesson has been damaged by TIN Network's failure and refusal to pay the amounts due under the TIN Network Loan Note.

126.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $85,678.76, together with interest at the rate set forth in the TIN Network Loan Note, service fees and charges, McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT – TIN CASTRO CREDIT APP.

### (Against Defendant TIN Castro)

127.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

128.   The TIN Castro Credit App. constitutes an enforceable agreement between McKesson and TIN Castro.

129.   In the TIN Castro Credit App., TIN Castro agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN Castro's account.

130.   McKesson satisfied its obligations under the terms of the TIN Castro Credit App.

131.   TIN Castro received and accepted the Goods delivered by McKesson to TIN Castro in good condition, without objection and without timely rejection or revocation of acceptance.

132.   McKesson issued Invoices to TIN Castro for the Goods.

133.   TIN Castro breached the TIN Castro Credit App. by, among other things, failing to pay for the Goods when payment was due.

134.   McKesson has been damaged by TIN Castro's breaches.

135.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $243,725.09, together with service fees and charges, interest, McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## FIFTH CLAIM FOR RELIEF

### BREACH OF CONTRACT – TIN CASTRO NOTE

### (Against Defendant TIN Castro)

136.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

137.   In exchange for fair consideration, TIN Castro agreed to pay the amounts due under the TIN Castro Note in accordance with the terms of the TIN Castro Note.

138.   McKesson has fulfilled all of its obligations under the TIN Castro Note.

139.   TIN Castro has breached its obligations under the TIN Castro Note, by among other things, failing to pay the amounts due thereunder.

140.   McKesson has been damaged by TIN Castro's failure and refusal to pay the amounts due under the TIN Castro Note.

141.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $183,714.52, together with interest at the rate set forth in the TIN Castro Note, service fees and charges, McKesson's costs of collection and

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## SIXTH CLAIM FOR RELIEF

### BREACH OF CONTRACT – TIN TOWER CREDIT APP.

### (Against Defendant TIN Tower)

142.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

143.   The TIN Tower Credit App. constitutes an enforceable agreement between McKesson and TIN Tower.

144.   In the TIN Tower Credit App., TIN Tower agreed to be bound by the Standard Terms of Sale published by McKesson as shown on McKesson's invoices or statements or by any written agreement or terms of sale with McKesson governing TIN Tower's account.

145.   McKesson satisfied its obligations under the terms of the TIN Tower Credit App.

146.   TIN Tower received and accepted the Goods delivered by McKesson to TIN Tower in good condition, without objection and without timely rejection or revocation of acceptance.

147.   McKesson issued Invoices to TIN Tower for the Goods.

148.   TIN Tower breached the TIN Tower Credit App. by, among other things, failing to pay for the Goods when payment was due.

149.   McKesson has been damaged by TIN Tower's breaches.

150.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $157,609.39, together with service fees and charges, interest, McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## SEVENTH CLAIM FOR RELIEF

## BREACH OF CONTRACT – TIN TOWER NOTE

### (Against Defendant TIN Tower)

151.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

152.   In exchange for fair consideration, TIN Tower agreed to pay the amounts due under the TIN Tower Note in accordance with the terms of the TIN Tower Note.

153.   McKesson has fulfilled all of its obligations under the TIN Tower Note.

154.   TIN Tower has breached its obligations under the TIN Tower Note, by among other things, failing to pay the amounts due thereunder.

155.   McKesson has been damaged by TIN Tower's failure and refusal to pay the amounts due under the TIN Tower Note.

156.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $130,713.26, together with interest at the rate set forth in the TIN Tower Note, service fees and charges, McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## EIGHTH CLAIM FOR RELIEF

## BREACH OF CONTRACT – CROSS-CORPORATE GUARANTY

### (Against Defendants)

157.   Plaintiff incorporates by reference all allegations contained in each of the preceding paragraphs of the Complaint as if those allegations were more fully set forth herein.

158.   The Cross-Corporate Guaranty constitutes a contract between McKesson and Defendants.

159.   At all times hereinafter mentioned, McKesson did fully comply with any and all terms and conditions of the Cross-Corporate Guaranty and provided

Defendants with fair consideration in exchange for the Cross-Corporate Guaranty.

160.   McKesson has demanded payment in full from the Defendants under the Cross-Corporate Guaranty.

161.   The Defendants have failed and refused to pay the amounts due under the Cross-Corporate Guaranty.

162.   The Defendants' failure and refusal to pay the amount due to McKesson under the Cross-Corporate Guaranty constitutes a breach of the Cross-Corporate Guaranty.

163.   Under the Cross-Corporate Guaranty the Defendants are obligated to the amounts due to McKesson under the Credit Applications (including the outstanding Total Goods Balance), Notes, TIN Network Loan Note and Texas TINs Loan Note.

164.   By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $2,223,013.41, together with interest, service fees and charges, McKesson's costs of collection and reasonable attorneys' fees, according to proof at time of trial or entry of judgment.

## NINTH CLAIM FOR RELIEF
### GOODS SOLD AND DELIVERED
### (Alternative Claim Against Defendants)

165.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 105 above, as if those allegations were set more fully forth herein.

166.   In the alternative, should this Court find no express contract between McKesson and the Defendants, and/or this Court does not grant the full relief requested under the breach of contract claims for relief, McKesson asserts this cause of action for Goods Sold and Delivered.

167.   Within the last four years, McKesson sold the Goods to the Defendants as requested by the Defendants.

168.   McKesson and each of the Defendants agreed upon the purchase price

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

COMPLAINT
BN 82024409v1

of the Goods.

169.   The Defendants each received and accepted the Goods they each ordered without objecting to the price and without identifying any defects in the quality or quantity of the Goods.

170.   Despite their receipt and acceptance of the Goods, and despite due demand by McKesson, the Defendants have failed and refused to pay their respective Goods Balance.

171.   McKesson has been damaged by the Defendants' failure and refusal to pay their respective Goods Balance.

172.   There is now due, owing and unpaid from Defendants to Plaintiff the sum of not less than $544,530.72 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower; together with interest at the legal rate and other fees and charges, including McKesson's costs of collection and reasonable attorneys' fees to the extent allowed by law, according to proof at time of trial or entry of judgment.

## TENTH CLAIM FOR RELIEF

### OPEN BOOK ACCOUNT

### (Alternative Claim Against Defendants)

173.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 105 above, as if those allegations were set more fully forth herein.

174.   In the alternative, should this Court find no express contract between McKesson and the Defendants, and/or this Court does not grant the full relief requested under the breach of contract claims for relief, McKesson asserts this cause of action for Open Book Account.

175.   Within the last four years, McKesson sold and delivered various goods to Defendants on an open and running account between McKesson and Defendants and there is now due and owing on that account the sum of $544,530.72 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower.

**COMPLAINT**

176.   The whole of the above sum has not been paid, although demand therefore has been made.

177.   There is now due, owing and unpaid from Defendants to Plaintiff the sum of not less than $544,530.72 for TIN Network, $243,725.09 for TIN Castro; and $157,609.39 for TIN Tower; together with interest at the legal rate and other fees and charges, including McKesson's costs of collection and reasonable attorneys' fees to the extent allowed by law, according to proof at time of trial or entry of judgment.

## ELEVENTH CLAIM FOR RELIEF

### ACCOUNT STATED

### (Alternative Claim Against Defendants)

178.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 105 above, as if those allegations were set more fully forth herein.

179.   In the alternative, should this Court find no express contract between McKesson and the Defendants, and/or this Court does not grant the full relief requested under the breach of contract claims for relief, McKesson asserts this cause of action for Account Stated.

180.   Within the last four years, McKesson stated an account by delivering the Invoices to each of the Defendants identifying the amount owed to McKesson based upon the sale of the Goods to each of the Defendants.

181.   The Defendants did not dispute any of the information contained in their respective Invoices, including without limitation, the amount owed, and/or the quality or quantity of the Goods identified therein.

182.   McKesson has been damaged by Defendants' failure and refusal to pay the amounts set forth in their respective Invoices.

183.   There is now due, owing and unpaid from Defendants to Plaintiff the sum of not less than $544,530.72 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower; together with interest at the legal rate and other fees and

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

charges, including McKesson's costs of collection and reasonable attorneys' fees to the extent allowed by law, according to proof at time of trial or entry of judgment.

### TWELFTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### (Alternative Claim Against Defendants)

184.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 105 above, as if those allegations were set more fully forth herein, with the exception of any allegation as to the existence of a contract between Defendants, on the one hand, and McKesson, on the other hand.

185.   In the alternative, should this Court find no express contract between McKesson and Defendants, and/or this Court does not grant the full relief requested under the breach of contract claims for relief, McKesson asserts this claim for unjust enrichment.

186.   McKesson conferred a benefit upon TIN Network by selling and delivering to TIN Network, the Goods with a total value in an amount not less than $544,530.72 and by receiving the $437,118 loan proceeds tendered by McKesson to TIN Network of which $85,678.76 remains due and owing.

187.   McKesson conferred a benefit upon TIN Castro by selling and delivering to TIN Castro, the Goods with a total value in an amount not less than $243,725.09.

188.   McKesson conferred a benefit upon TIN Tower by selling and delivering to TIN Tower, the Goods with a total value in an amount not less than $157,609.39.

189.   Defendants have appreciated, acknowledged and retained the benefit of the Goods and for TIN Network also the unpaid loan balance.

190.   As of the date of this Complaint, not less than $544,530.72 is owed to McKesson on account of TIN Network's receipt of the Goods and not less than

BUCHALTER
A PROFESSIONAL CORPORATION
SEATTLE

**COMPLAINT**

BN 82024409v1

$85,678.76 is owed to McKesson on account of TIN Network's receipt of the loan proceeds.

191. As of the date of this Complaint, not less than $243,725.09 is owed to McKesson on account of TIN Castro's receipt of the Goods.

192. As of the date of this Complaint, not less than $157,609.39 is owed to McKesson on account of TIN Tower's receipt of the Goods.

193. Defendants' retention of the benefit of the Goods and TIN Network's retention of the loan proceeds, and each Defendant's refusal to pay for same is improper, unconscionable and contrary to the fundamental principles of justice or equity.

194. By reason of the foregoing, McKesson seeks monetary damages in an amount not less than $630,209.48 from TIN Network, $243,725.09 from TIN Castro, and $157,609.39 from TIN Tower, together with interest at the legal rate and other fees and charges, including McKesson's costs of collection and reasonable attorneys' fees to the extent allowed by law, according to proof at time of trial or entry of judgment.

## THIRTEENTH CLAIM FOR RELIEF

## QUANTUM MERUIT

### (Alternative Claim Against Defendants)

195. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 105 above, as if those allegations were set more fully forth herein, with the exception of any allegation as to the existence of a contract between Defendants, on the one hand, and McKesson, on the other hand.

196. In the alternative, should this Court find no express contract between McKesson and Defendants, and/or this Court does not grant the full relief requested under the breach of contract claims for relief, McKesson asserts this claim for quantum meruit.

197.   Within the last four years, McKesson conferred a benefit on Defendants by delivering the Goods to Defendants and the loan proceeds to TIN Network.

198.   Defendants knew that McKesson conferred a benefit on Defendants by delivering the Goods and the loan proceeds to TIN Network.

199.   In fact, delivery of McKesson's Goods were accepted without objection, and without revocation of acceptance.  Further, on information and belief, the Goods delivered by McKesson and the proceeds from the loan to TIN Network were used in Defendants' continuing business.

200.   Under these circumstances, it would be inequitable and unfair if Defendants were not required to pay the fair and reasonable value for the Goods, which at the time of sale was at least $544,530.72 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower and the loan proceeds which outstanding balance is $85,678.76 for TIN Network.

201.   The total reasonable value of the wrongfully retained Goods is not less than $630,209.48 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower, which reflects the amounts charged by McKesson for the Goods that Defendants retained without making payment and $85,678.76 for the amount of the TIN Network Note which remains unpaid.

## **PRAYER FOR RELIEF**

WHEREFORE, McKesson respectfully requests the following relief:

1.   Judgment in favor of McKesson on the First Claim for Relief for Breach of Contract – TIN Network Credit App. against Defendant TIN Network in an amount not less than $544,530.72, together with interest and other fees and charges and McKesson's costs of collection and reasonable attorneys' fees according to proof;

2.   Judgment in favor of McKesson on the Second Claim for Relief for Breach of Contract – TIN Network Note against Defendant TIN Network in an amount not less than $318,409.60, together with interest and other fees and charges

1 | and McKesson's costs of collection and reasonable attorneys' fees according to

2 | proof;

3 |        3.     Judgment in favor of McKesson on the Third Claim for Relief for

4 | Breach of Contract – TIN Network Loan Note against Defendant TIN Network in an

5 | amount not less than $85,678.76, together with interest and other fees and charges

6 | and McKesson's costs of collection and reasonable attorneys' fees according to

7 | proof;

8 |        4.     Judgment in favor of McKesson on the Fourth Claim for Relief for

9 | Breach of Contract – TIN Castro Credit App. against Defendant TIN Castro in an

10 | amount not less than $243,725.09, together with interest and other fees and charges

11 | and McKesson's costs of collection and reasonable attorneys' fees according to

12 | proof;

13 |        5.     Judgment in favor of McKesson on the Fifth Claim for Relief for Breach

14 | of Contract – TIN Castro Note against Defendant TIN Castro in an amount not less

15 | than $183,714.52, together with interest and other fees and charges and McKesson's

16 | costs of collection and reasonable attorneys' fees according to proof;

17 |        6.     Judgment in favor of McKesson on the Sixth Claim for Relief for Breach

18 | of Contract – TIN Tower Credit App. against Defendant TIN Tower in an amount

19 | not less than $157,609.39, together with interest and other fees and charges and

20 | McKesson's costs of collection and reasonable attorneys' fees according to proof;

21 |        7.     Judgment in favor of McKesson on the Seventh Claim for Relief for

22 | Breach of Contract – TIN Tower Note against Defendant TIN Tower in an amount

23 | not less than $130,713.26, together with interest and other fees and charges and

24 | McKesson's costs of collection and reasonable attorneys' fees according to proof;

25 |        8.     Judgment in favor of McKesson on the Eighth Claim for Relief for

26 | Breach of Contract – Cross-Corporate Guaranty against Defendants in an amount not

27 | less than $2,223,013.41, together with interest and other fees and charges and

28 | McKesson's costs of collection and reasonable attorneys' fees according to proof;

9.      Judgment in favor of McKesson on the Ninth Claim for Relief for Goods Sold and Delivered against Defendants in an amount not less than $544,530.72 for TIN Network, $243,725.09 for TIN Castro; and $157,609.39 for TIN Tower, together with interest and McKesson's costs of collection, and reasonable attorneys' fees to the extent allowed by law, according to proof;

10.     Judgment in favor of McKesson on the Tenth Claim for Relief for Open Book against Defendants in an amount not less than $544,530.72 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower, together with interest and McKesson's costs of collection, and reasonable attorneys' fees to the extent allowed by law, according to proof;

11.     Judgment in favor of McKesson on the Eleventh Claim for Relief for Account Stated against Defendants in an amount not less than $544,530.72 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower, together with interest and McKesson's costs of collection, and reasonable attorneys' fees to the extent allowed by law, according to proof;

12.     Judgment in favor of McKesson on the Twelfth Claim for Relief for Unjust Enrichment against TIN Network in an amount not less than $630,209.48 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower, together with interest and McKesson's costs of collection, and reasonable attorneys' fees to the extent allowed by law, according to proof;

13.     Judgment in favor of McKesson on the Thirteenth Claim for Relief for Quantum Meruit against the Defendants in an amount not less than $630,209.48 for TIN Network, $243,725.09 for TIN Castro, and $157,609.39 for TIN Tower, together with interest and McKesson's costs of collection, and reasonable attorneys' fees to the extent allowed by law, according to proof; and

1    14.   For such other and further legal and equitable relief, including pre-

2 judgment and post-judgment interest, as the Court may deem just and proper.

3 DATED:  April 29, 2024                    BUCHALTER
                                           A Professional Corporation
4

5                                          By:   */s/ Joanne N. Davies*
6                                          JOANNE N. DAVIES
                                           1420 Fifth Avenue, Suite 3100
7                                          Seattle, WA 98101
                                           Telephone: 949.224.6221
8                                          Email:  jdavies@buchalter.com

9                                          RANDALL L. MANVITZ
                                           BUCHALTER
10                                         A Professional Corporation
                                           425 Market Street, Suite 2900
11                                         San Francisco, CA 94105-2491
                                           Telephone: 415.227.0900
12                                         Email:  rmanvitz@buchalter.com

13                                         Attorneys for Plaintiff, McKesson
14                                         Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28