UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCKESSON CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>TIN RX THE INDEPENDENT NETWORK, INC., et al.,<br><br>    Defendants. | Case No. 2:24-cv-01225-DJC-CSK<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND REQUIRING SUPPLEMENTAL BRIEF RE: PREJUDGMENT INTEREST<br><br>(ECF No. 9) |

    Pending before the Court is Plaintiff McKesson Corporation's motion for default judgment pursuant to Federal Rules of Civil Procedure 55(b)(2) as to eight of Plaintiff's thirteen claims. (ECF No. 9.)[1] This motion was set for hearing for August 20, 2024. (*Id.*) Defendants TIN Rx The Independent Network, Inc., TIN Rx/Castro, San Francisco and TIN Rx At the Tower, Inc. did not file a response to the motion, nor have they appeared in this case in any way. On July 31, 2024, Plaintiff's motion was taken under submission without argument pursuant to Local Rule 230(c) and (g). (ECF No. 10.) For the reasons stated below, the Court recommends Plaintiff's motion for default judgment be GRANTED, and that judgment be entered in favor of Plaintiff.

///

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 302(c)(19).

# I. BACKGROUND

## A. Factual Background

Plaintiff is a distributor of pharmaceutical products. Compl. at 2 ¶ 5 (ECF No. 1). Defendants TIN Rx The Independent Network, Inc. (TIN Network), TIN Rx/Castro, San Francisco (TIN Castro) and TIN Rx At the Tower, Inc. (TIN Tower) are California pharmacies who purchase certain pharmaceutical products from Plaintiff. *Id*. at 2, ¶ 6. Over the course of several years, Plaintiff and Defendants entered into a series of agreements wherein Plaintiff agreed to sell Defendants pharmaceutical products and Defendants agreed to purchase and accept goods from Plaintiff. *Id*. at 2-3 ¶¶ 7-8.

### 1. TIN Network

On or about November 14, 2017, Defendant TIN Network executed a credit application with Plaintiff for the purchase of pharmaceutical products. Compl. at 5 ¶ 1, Exh. 1. The credit application provided that Defendant TIN Network would be bound by the Standard Terms of Sale published by Plaintiff on Plaintiff's invoices, statements, written agreements or terms of sale with Plaintiff. *Id*. at 5 ¶ 2. Defendant TIN Network also "agreed to pay for all purchases, fees and other charges incurred by [Defendant] TIN Network…including service charges on past due amounts at the highest rate permitted by law…[and] all reasonable attorneys' fees and expenses or costs" incurred by Plaintiff to enforce its right to collect amounts owed. *Id*. Between 2023 and 2024, Defendant TIN Network entered into a series of agreements evidenced by written invoices for the purchase of certain pharmaceutical products. ECF No. 9 at 8-9, Exh. A. The written invoices provided for payment on the next business day from the date of each invoice and a service charge at the highest rate permitted by law on all past due invoices. *Id*. at 10.

On or about July 30, 2018, Defendant TIN Network also issued a Negotiable Promissory Note ("TIN Network 2018 Note") to Plaintiff for $437,118.00, together with interest at the minimum rate of 7.25%. Compl. at 10 ¶ 22, Exh. 8. Pursuant to the terms of the TIN Network 2018 Note, Defendant TIN Network was required to make 83

consecutive monthly installment payments to Plaintiff in the amount of $5,203.78 and a final installment payment of $5,204.26, with any remaining principal and unpaid accrued interest also due and payable. *Id*. at 10-11 ¶ 23, Exh. 8. The TIN Network 2018 Note also provided for a late charge to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid. *Id*. at 11 ¶ 24.

On or about September 11, 2023, Defendant TIN Network issued a Negotiable Promissory Note ("TIN Network 2023 Note") to Plaintiff in the amount of $349,802.08, together with interest at the rate of 10.5% per annum. *Id*. at 12 ¶ 33, Exh. 15. Defendant TIN Network was required to make 77 weekly installment payments to Plaintiff in the amount of $4,484.64 with a final installment payment of $4,484.80, with any remaining principal and unpaid accrued interest also due and payable. *Id*. at 13 ¶ 34. The TIN Network 2023 Note also provided for a late charge to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid. *Id*. at 13 ¶ 35. To secure its obligations under the credit application, the TIN Network 2018 Note and the TIN Network 2023 Note, Defendant TIN Network granted Plaintiff a security interest in all its personal property. *Id*. at 6 ¶ 3, 11 ¶ 25, 13 ¶ 36.

Plaintiff alleges Defendant TIN Network defaulted on the terms of the written invoices, the TIN Network 2018 Note and the TIN Network 2023 Note by failing to make payments when due. Compl. at 13 ¶ 37, 21 ¶ 90; ECF No. 9 at 10. Plaintiff alleges because Defendant TIN Network has defaulted on its payments, Plaintiff is entitled to the unpaid principal balance on the written invoices ($218,747.14), the TIN Network 2018 Note ($85,678.76), and the TIN Network 2023 Note ($318,409.60). Compl. at 13 ¶ 38, 21 ¶ 91; ECF No. 9 at 10.

### 2. TIN Castro

On or about May 9, 2019, TIN Castro executed a credit application with Plaintiff for the purchase of pharmaceutical products. Compl. at 6 ¶ 4, Exh. 2. The credit

application provided that Defendant TIN Castro would be bound by the Standard Terms of Sale published by Plaintiff on Plaintiff's invoices, statements, written agreements or terms of sale with Plaintiff. *Id*. at 6 ¶ 5. Defendant TIN Castro also "agreed to pay for all purchases, fees and other charges incurred by [Defendant] TIN Castro…including service charges on past due amounts at the highest rate permitted by law…[and] all reasonable attorneys' fees and expenses or costs" incurred by Plaintiff to enforce its right to collect amounts owed. *Id*. Between 2023 and 2024, Defendant TIN Castro entered into a series of agreements evidenced by written invoices for the purchase of certain pharmaceutical products. ECF No. 9 at 12, Exh. D. The written invoices provided for payment on the next business day from the date of each invoice and a service charge at the highest rate permitted by law on all past due invoices. *Id*. at 13.

On or about September 11, 2023, Defendant TIN Castro also issued a Negotiable Promissory Note ("TIN Castro Note") to Plaintiff for $194,529.69, together with interest at the minimum rate of 10.5% per annum. Compl. at 13-14 ¶ 41, Exh. 16. Pursuant to the terms of the TIN Castro Note, Defendant TIN Castro was required to make 77 consecutive weekly installment payments to Plaintiff in the amount of $2,493.97 and a final installment payment of $2,494.00, with any remaining principal and unpaid accrued interest also due and payable. *Id*. at 14 ¶ 41. The TIN Castro Note also provided for a late charge to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid. *Id*. at 14 ¶ 42. To secure its obligations under the credit application and the TIN Castro Note, Defendant TIN Castro granted Plaintiff a security interest in all its personal property. *Id*. at 6 ¶ 6, 14 ¶ 43.

Plaintiff alleges Defendant TIN Castro defaulted on the terms of the written invoices and the TIN Castro Note by failing to make payments when due. Compl. at 14 ¶ 44; ECF No. 9 at 13. Plaintiff alleges because Defendant TIN Castro has defaulted on its payments, Plaintiff is entitled to the unpaid principal balance on the written invoices ($58,853.71) and the TIN Castro Note ($183,714.52). Compl. at 14 ¶ 45; ECF No. 9 at

13.

          3.    <u>TIN Tower</u>

On or about November 16, 2019, TIN Tower executed a credit application with Plaintiff for the purchase of pharmaceutical products. Compl. at 6 ¶ 7, Exh. 3. The credit application provided that Defendant TIN Tower would be bound by the Standard Terms of Sale published by Plaintiff on Plaintiff's invoices, statements, written agreements or terms of sale with Plaintiff. *Id*. at 7 ¶ 8. Defendant TIN Tower also "agreed to pay for all purchases, fees and other charges incurred by [Defendant] TIN Tower…including service charges on past due amounts at the highest rate permitted by law…[and] all reasonable attorneys' fees and expenses or costs" incurred by Plaintiff to enforce its right to collect amounts owed. *Id*. Between 2023 and 2024, Defendant TIN Tower entered into a series of agreements evidenced by written invoices for the purchase of certain pharmaceutical products. ECF No. 9 at 14, Exh. F. The written invoices provided for payment on the next business day from the date of each invoice and a service charge at the highest rate permitted by law on all past due invoices. *Id*. at 15. On or about September 11, 2023, Defendant TIN Tower issued a Negotiable Promissory Note ("TIN Tower Note") to Plaintiff in the amount of $143,600.47, together with interest at the rate of 10.5% per annum. *Id*. at 14 ¶ 47, Exh. 17. Defendant TIN Tower was required to make 77 weekly installment payments to Plaintiff in the amount of $1,841.03 with a final installment payment of $1,841.16, with any remaining principal and unpaid accrued interest also due and payable. *Id*. at 15 ¶ 48. The TIN Tower Note also provided for a late charge to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid. *Id*. at 15 ¶ 49. To secure its obligations under the credit application and the TIN Tower Note, Defendant TIN Tower granted Plaintiff a security interest in all its personal property. *Id*. at 7 ¶ 9, 15 ¶ 50.

Plaintiff alleges Defendant TIN Tower defaulted on the terms of the written invoices and the TIN Tower Note by failing to make payments when due. Compl. at 15

5

¶ 51; ECF No. 9 at 13. Plaintiff alleges because Defendant TIN Castro has defaulted on its payments, Plaintiff is entitled to the unpaid principal balance on the written invoices ($12,718.21) and the TIN Tower Note ($130,713.26). Compl. at 14 ¶ 45; ECF No. 9 at 15.

### 4. Texas TINs

In 2022, the TIN RX brand expanded its pharmacies into Texas through TIN RX #805, Inc., TIN RX #806, Inc., TIN RX #807, Inc., and TIN RX #808, Inc. ("Texas TINs"). Compl. at 3 ¶ 10.

On or about February 18, 2022, the Texas TINs issued a Negotiable Promissory Note ("Texas TINs 2022 Note") to Plaintiff for $920,000, together with interest at the minimum rate of 6.25%. Compl. at 11 ¶ 27, Exh. 10. Pursuant to the terms of the Texas TINs 2022 Note, the Texas TINs were required to make 83 consecutive weekly installment payments to Plaintiff in the amount of $13,550.40 and a final installment payment in the remaining principal and unpaid accrued interest also due and payable. *Id*. at 11 ¶ 28. The Texas TINs 2022 Note also provided for a late charge to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid. *Id*. at 12 ¶ 29.

On or about September 12, 2023, each of the Texas TINs issued Negotiable Promissory Notes to Plaintiff, each for the principal amount of $43,317.31 ("Texas TINs 805 Note"), $160,919.17 ("Texas TINs 806 Note"), $165,613.27 ("Texas TINs 807 Note"), and $31,440.52 ("Texas TINs 808 Note") (collectively "Texas TINs 2023 Notes"). Compl. at 15 ¶ 54, 16 ¶ 61, 17 ¶ 68, 19 ¶ 75, Exhs. 18-21. Pursuant to the terms of the Texas TINs 2023 Notes, the Texas TINs were required to make 77 consecutive weekly installment payments to Plaintiff and a final installment payment, with any remaining principal and unpaid accrued interest also due and payable. Compl. at 16 ¶ 55, 17 ¶ 62, 18 ¶ 69, 19 ¶ 76. The Texas TINs 2023 Notes also provided for a late charge to be added to the debt in an amount equal to 1.5% per month of each payment that was delinquent by 10 days or more until the delinquency was paid. *Id*. at 16 ¶ 56, 17 ¶ 63, 18

¶ 70, 19 ¶ 77.

Plaintiff alleges the Texas TINs defaulted on the terms of the Texas TINs 2023 Notes by failing to make payments when due. *Id*. at 16 ¶ 58, 17 ¶ 65, 18 ¶ 72, 19 ¶ 79. Plaintiff alleges because the Texas TINs have defaulted on their payments, Plaintiff is entitled to the unpaid principal balance on the Texas TINs 2022 Note for $791,596.31. Plaintiff also alleges it is entitled to the unpaid principal balance on the Texas TINs 2023 Notes, specifically Plaintiff alleges it is owed $43,317.31 for the Texas TINs 805 Note, $158,856.11 for the Texas TINs 806 Note, $165,613.27 for the Texas TINs 807 Note, and $31,314.95 for the Texas TINs 808 Note. *Id*. at 16 ¶ 59, 17 ¶ 66, 18 ¶ 73, 19 ¶ 80.

### 5. Cross-Corporate Guaranty

On or about October 3, 2023, Defendants and Texas TINs entered into a cross-corporate guaranty with Plaintiff. Compl. at 19-20 ¶ 82, Exh. 22. Pursuant to the cross-corporate guaranty, Defendants and Texas TINs "absolutely, unconditionally and irrevocably guaranteed, and jointly and severally, as primary obligor, the full and prompt performance and payment when due, of all of the" "present and future obligations" to Plaintiff. *Id*. at 20 ¶ 83. Pursuant to the cross-corporate guaranty, Plaintiff alleges it is entitled to be paid the aggregate principal of $2,199,153.15, plus unpaid accrued interest and late charges for Defendants' and the Texas TINs' default. *Id*. at 21 ¶ 88; ECF No. 9 at 19.

### B. Procedural Background

Plaintiff filed its Complaint on April 29, 2024 asserting thirteen state law claims, including breach of contract (Claims 1-8), goods sold and delivered (Claim 9), open book account (Claim 10), account stated (Claim 11), unjust enrichment (Claim 12), and quantum meruit (Claim 13). Compl. 24-35 ¶¶ 106-201. On May 2, 2024, Plaintiff filed proofs of service indicating each Defendant's authorized agent for service of process was personally served on April 30, 2024. ECF Nos. 6-1, 6-2, 6-3. After Defendants failed to appear, Plaintiff filed a request for entry of default against all Defendants on May 30, 2024. (ECF No. 7.) The Clerk of the Court entered default as to all Defendants on May

31, 2024. (ECF No. 8.)

On July 9, 2024, Plaintiff moved for default judgment against Defendants and set the motion for a August 20, 2024 hearing before the undersigned. Pl. Mot. (ECF No. 9). Plaintiff served by express overnight mail the operative motion and supporting documents on Defendants' agent for service of process. (ECF No. 9-16.) Defendants did not respond to the motion for default judgment. *See* Docket. On July 31, 2024, the Court issued an order taking Plaintiff's motion under submission; vacating the hearing; ordering a written response from Defendants by August 20, 2024; and directing Plaintiff to serve Defendants with a copy of the order. (ECF No. 10.) In its July 31, 2024 Order, the Court warned Defendants that the failure to respond may result in the imposition of default judgment against them. *Id*. On the same day, Plaintiff filed a proof of service indicating each of Defendant's authorized agent for service of process was served with the order by express overnight mail. (ECF No. 11.) Defendants did not respond. *See* Docket.

## II.     LEGAL STANDARDS

Under Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, this default does not automatically entitle the plaintiff to a judgment. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citations omitted). The decision to grant or deny the entry of default judgment is within the district court's discretion. *NewGen, LLC v. Safe Cig, LLC,* 840 F.3d 606, 616 (9th Cir. 2016).

In determining whether to enter default judgment, courts consider the following factors:

1. the possibility of prejudice to the plaintiff;
2. the merits of the substantive claim(s);
3. the sufficiency of the complaint;
4. the amount of money at stake in the lawsuit;
5. whether there are any disputes of material fact;

6. whether the defendant's default was due to excusable neglect; and

7. the strong policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Ninth Circuit has long disfavored default judgments, counseling that cases be decided on the merits "whenever reasonably possible." *Id*. at 1472.

Once a default is entered, all well-pled allegations in the complaint regarding liability are deemed true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (citation omitted). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Necessary facts not contained in the pleadings and claims which are legally insufficient are not established by default. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, a plaintiff's allegations regarding damages are not deemed true at default, and the plaintiff bears the burden to prove damages with evidence. *See* Fed. R. Civ. P. 55(b)(2)(C); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**III.    DISCUSSION**

Plaintiff moves for default judgment against Defendants as to its breach of contract claims (Claims 1-8) only. Pl. Mot. at 1. Because Plaintiff's claims for goods sold and delivered (Claim 9), open book account (Claim 10), account stated (Claim 11), unjust enrichment (Claim 12), and quantum meruit (Claim 13) were pled in the alternative in the event Defendants challenged the enforceability of the agreements, Plaintiff does not seek default judgment as to these claims. *Id*. Plaintiff requests the Court enter judgment in favor of it for $2,199,533.15 in unpaid principal, plus $205,467.20 in prejudgment interest, for an aggregate amount of $2,405,000.35. *Id*. at 2. Plaintiff waives recovery of its reasonable attorneys' fees and costs. *Id.*

### A. Jurisdiction and Service

As a preliminary matter, a court considering whether to enter default judgment must first determine whether it has jurisdiction over both the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject matter jurisdiction over this action pursuant to diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff is a Delaware corporation with its principal place of business located in Texas. Compl. at 4 ¶ 15. Defendants are each California corporations with their principal place of business in California. *Id.* at 4- 5 ¶¶ 16- 8. The amount in controversy, exclusive of interest and costs, exceeds $75,000. *Id.* at 2 ¶ 1.

In addition, the Court has personal jurisdiction over Defendants, who are California corporations. *See AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) ("a corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business") (citations omitted).

The Court also finds service was proper under Federal Rules of Civil Procedure 4(h)(1)(B). Under California law, a corporation may be served by delivering a summons and complaint to certain individuals, including the person designated as agent for service of process. Cal. Civ. Proc. § 416.10(a)-(b). Here, Jennifer Lee, Defendants' designated agent for service of process, was personally served on April 30, 2024 on behalf of each of the Defendants. ECF Nos. 6-1, 6-2, 6-3.

### B. *Eitel* Factors

For the following reasons, the Court finds that the *Eitel* factors weigh in favor of granting default judgment against Defendants as to the breach of contract claims (Claims 1-8).

#### 1. Factor One: The Possibility of Prejudice to the Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment were not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See PepsiCo,* 238 F. Supp. 2d at 1177. Here, the Clerk of the Court entered default against Defendants on May 31, 2024 (ECF No. 8), and the

10

Defendants have not participated in the litigation despite being served with the Complaint, default judgment motion, and the Court's July 31, 2024 order. *See* Docket. Plaintiffs would suffer prejudice if the Court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of default judgment.

### 2. Factors Two and Three: The Merits of the Claims and the Sufficiency of the Complaint

The merits of Plaintiff's substantive claims and the sufficiency of the Complaint are considered together due to the relatedness of the two inquiries. The Court must consider whether the allegations in the Complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Here, the merits of the claims and the sufficiency of the Complaint favor entry of default judgment.

Before turning to the merits and sufficiency, the Court must first address choice of law issues to determine which forum's law applies to the breach of contract claims. Federal courts sitting in diversity look to the law of the forum state—here, California—when making choice of law determinations. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under California law, the choice of law provision in the parties' agreement will govern so long as (1) the chosen state has a substantial relationship to the parties or their transaction, and (2) there is any reasonable basis for the parties' choice of law. *Gramercy Inv. Tr. v. Lakemont Homes Nevada, Inc.*, 198 Cal. App. 4th 903, 909 (2011).

Plaintiff moves for default judgment as to its breach of contract claims pursuant to California law. Pl. Mot. at 1, 15-16. This is correct as to the TIN Network 2018 Note (Claim 3) because this agreement specifies California law governs. Compl. Exh. 8. Additionally, California has a substantial relationship to the parties as it is where Defendants are incorporated and there is a reasonable basis for the parties' choice of law considering Defendants reside in California. *See Gramercy Inv. Tr.*, 198 Cal. App.

4th at 909. As to the following agreements Claim 1 (TIN Network's Credit Application), Claim 4 (TIN Castro's Credit Application), and Claim 6 (TIN Tower's Credit Application), the Court finds California law governs because no choice of law provision is included in these agreements and there is no compelling reason that the Court can find to displace California law. *See* Compl. Exhs. 1-3; *see also Shanghai Automation Instrument Co. v. Kuei,* 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001) ("In a diversity case, absent a choice-of-law contractual provision and under California choice of law rules, the Court presumes California law to apply unless there exists a compelling reason to displace state law with the law of a foreign jurisdiction.").

However, the underlying agreements for four of Plaintiff's breach of contract claims are governed by Delaware law because these agreements specify that Delaware law governs:  Claim 2 (the TIN Network 2023 Note), Claim 5 (the TIN Castro Note), Claim 7 (the TIN Tower Note), and Claim 8 (Cross-Corporate Guaranty). *See* Compl. Exhs. 15, 16, 17, 22. Delaware has a substantial relationship to the parties as it is where Plaintiff is incorporated. Further, there is a reasonable basis for Delaware law to apply to Claims 2, 5, 7, and 8 because there is a reasonable basis for the parties' choice of Delaware law where Plaintiff resides in Delaware. *See Kuntz v. Lamar Corp*., 385 F.3d 1177, 1181 (9th Cir. 2004) (citing 28 U.S.C. § 1332(c)(1)). Accordingly, the Court will apply Delaware law as to Plaintiff's breach of contract Claims 2, 5, 7, and 8, and California law as to Plaintiff's breach of contract Claims 1, 3, 4, and 6.

      a.  *Breach of Contract Claims 1, 3, 4, 6 Pursuant to California Law*

To prevail on a breach of contract claim under California law, a plaintiff must establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Here, Plaintiff has sufficiently alleged claims for breach of contract (Claims 1, 3, 4, 6) under California law. The Complaint sufficiently alleges Plaintiff entered into valid agreements with

Defendants as to Defendant TIN Network's credit application, Defendant TIN Network's TIN Network 2018 Note, Defendant TIN Castro's credit application, and Defendant TIN Tower's credit application. Compl. Exhs. 1, 2, 3, 8. Plaintiff alleges it performed all of its obligations under the agreements and Defendants failed to pay the amount owed under the agreements, thereby damaging Plaintiff. Compl. at 3 ¶ 9, 21 ¶ 90, 22 ¶ 99. Accordingly, Plaintiff has sufficiently pled meritorious breach of contract claims.

### b. Breach of Contract Claims 2, 5, 7 Pursuant to Delaware Law

In Delaware, the elements for a breach of contract claims are (1) "the existence of the contract, whether express or implied"; (2) "the breach of an obligation imposed by that contract"; and (3) "the resultant damage to the plaintiff." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 389 (3d Cir. 2016) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). Here, Plaintiff has sufficiently alleged claims for breach of contract (Claims 2, 5, and 7) under Delaware law. The Complaint sufficiently alleges that agreements existed between Plaintiff and Defendants as to Defendant TIN Network's TIN Network 2023 Note, Defendant TIN Castro's TIN Castro Note and Defendant TIN Tower's TIN Tower Note. Compl. Exhs. 15, 16, 17. Plaintiff alleges it performed all of its obligations under the agreements and Defendants failed to pay the amount owed under the agreements, thereby damaging Plaintiff. Compl. at 13 ¶ 37, 14 ¶ 44, 15 ¶ 51. Therefore, Plaintiff has sufficiently pled meritorious breach of contract claims.

### c. Breach of Guaranty Claim 8 Pursuant to Delaware Law

With respect to the breach of guaranty claim (Claim 8), under Delaware law, "a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance." *Falco v. Alpha Affiliates, Inc.*, 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997). "[I]n order for a guaranty to be enforceable it must, with reasonable clearness, evidence an intent on the part of a party to become liable on an obligation in the event of default by the primary obligor." *Id*. (internal quotation marks and citation

omitted). The cross-corporate guaranty provides that any default by the Defendants and the Texas TINs under their agreements shall be a default by all Defendants. Compl. Exh. 22. The signed guaranty clearly provides that Defendants agreed to pay the debt of all Defendants and the Texas TINs, including the Texas TINs 2022 Note and the Texas TINs 2023 Notes. *Id.* Accordingly, Defendants breach of contract under the agreements, as discussed above, constitutes a breach of guaranty by Defendants. Therefore, Plaintiff has sufficiently pled a breach of contract claim as to the cross-corporate guaranty.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. *PepsiCo,* 238 F. Supp. 2d at 1176. The sum of money here is significant, though not unreasonable as it is directly connected to the agreements and respective breaches. Accordingly, the fourth *Eitel* factor favors the entry of default judgment.

### 4. Factor Five: The Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and Plaintiff has provided the Court with well-pleaded allegations and documentation supporting its claims. *See generally* Compl. Here, the Court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500; *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the fifth *Eitel* factor favors the entry of default judgment.

### 5. Factor Six: Whether Default was Due to Excusable Neglect

Upon review of the record before the Court, there is no indication that the default was the result of excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiffs served Defendants with the summons and the Complaint. (ECF No. 6.) Plaintiff also

14

served Defendants with notice of its application for default judgment and with the Court's July 31, 2024 Order. Pl. Mot. Exh. 16; ECF No. 11. Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendants have failed to participate in this action or to defend themselves. Accordingly, the sixth *Eitel* factor favors the entry of default judgment.

### 6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Although the Court is cognizant of the policy favoring decisions on the merits, that policy does not, by itself, preclude the entry of default judgment where a defendant fails to appear or defend itself in an action. *See PepsiCo,* 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

### 7. Conclusion

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants as to its breach of contract claims 1 through 8. The Court next determines the amount of damages to which Plaintiff is entitled.

**C.  Terms of Judgment**

### 1. Principal

As to damages, the principal amount of damages corresponds to the agreements, and so $2,199,533.15 is the appropriate amount of compensatory damages. ECF Nos. 9-2 through 9-13.

### 2. Prejudgment Interest

Prejudgment interest is a substantive part of a plaintiff's claim, and state law generally governs the award of prejudgment interest in diversity actions. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008); *see also Phillips 66 Co. v. Petros Rai Stations*, LLC, 2016 WL 1654957, at *8 (E.D. Cal. April 26, 2016) ("When a contract includes a valid choice of law provision, the court applies the

law of the chosen state to find the appropriate prejudgment interest."). Prejudgment interest is meant to compensate the plaintiff for the "accrual of wealth" that could have been produced during the period of loss. *Great W. Drywall, Inc. v. Roel Const. Co.*, 166 Cal. App. 4th 761, 767-68 (2008). Delaware law provides that the maximum interest rate must not exceed the Federal Reserve discount rate by more than 5%. *See* Del. Code Ann. tit. 6, § 2301. California law provides for interest at a rate of 10% per annum in contract cases after a breach. Cal. Civ. Code § 3289(b).

Plaintiff seeks to recover prejudgment interest "at the rate of each respective Promissory Note" and where a contract does not specify a rate, Plaintiff seeks to recover prejudgment interest at the rate of 10% per annum consistent with California law. Pl. Mot. at 18. This does not take into consideration, however, that some of the agreements are governed by Delaware law, not California law. This also appears to be incorrect because Plaintiff calculates prejudgment interest using an interest rate of 10% per annum for only the credit agreements (TIN Network's Credit Application, TIN Castro's Credit Application, and TIN Tower's Credit Application (Pl. Mot. Exhs. 9-2, 9-5, 9-7)), and then Plaintiff uses an interest rate of 18% per annum for the promissory notes (TIN Network 2018 Note, TIN Network 2023 Note, TIN Castro Note, TIN Tower Note, Texas TINs 2022 Note, and Texas TINs 2023 Notes) (Pl. Mot. Exhs. 9-3, 9-4, 9-6, 9-8, 9-9 through 9-13)).

The Court therefore lacks sufficient information to make a determination as to the amount of prejudgment interest that should be awarded. Accordingly, the Court will recommend that Plaintiff be provided with the opportunity to file a supplemental brief which clearly identifies which state law applies to each agreement, the interest rate used to calculate the prejudgment interest for each agreement, the legal authority supporting this calculation, and a description of the calculation. Should Plaintiff elect to file a limited supplemental brief, it should be filed within 21 days after the district judge rules on the Findings and Recommendations and Defendants should be provided the opportunity to respond within 21 days after the filing of Plaintiff's supplemental brief. If Plaintiff elects

not to file a limited supplemental brief, the Court will recommend that the award of prejudgment interest be denied. A determination of Plaintiff's prejudgment interest award, if any, will be made by further Findings and Recommendations.

## IV. CONCLUSION

For the reasons set forth above, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 9) be GRANTED;
2. Plaintiff be awarded $2,199,533.15 for its principal;
3. Within 21 days after the district judge rules on these Findings and Recommendations, Plaintiff be provided with the opportunity to file a supplemental brief limited to presenting a modified request for prejudgment interest on Plaintiff's claims following the instructions above. Should Plaintiff file a supplemental brief, Defendants will be provided the opportunity to respond within 21 days after the filing of Plaintiff's supplemental brief; and
4. Plaintiff's award of final judgment be deferred until after a determination of Plaintiff's prejudgment interest award can be made, which will be done by further Findings and Recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: February 10, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, mcke1225.24